**Arthur Ray VAN BUREN, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C6–95–1481.**

Supreme Court of Minnesota.

Dec. 5, 1996.

---

Mark D. Nyvold, St. Paul, for petitioner, appellant.

Hubert H. Humphrey, Attorney General, St. Paul, Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, for respondent.

## OPINION

PAGE, Justice.

Arthur Ray Van Buren was convicted by a Hennepin County jury of two counts of first-degree criminal sexual conduct under Minn. Stat. § 609.342, subds. 1(g) and 1(h)(iii)

(1994), and one count of solicitation of a minor for prostitution under Minn.Stat. § 609.324, subd. 1(b)(2) (1994), for the sexual assault of his 14–year–old niece, K.G. Van Buren was sentenced to 81 months in prison for his conviction under Minn.Stat. § 609.342, subd. 1(h)(iii), and to a concurrent sentence of 18 months for his conviction under Minn. Stat. § 609.324, subd. 1(b)(2).[1]

The convictions arose out of a complaint by K.G. that Van Buren had sexually assaulted her during the summer of 1992 when she was working for Van Buren's cleaning business. Van Buren testified at trial and denied sexually assaulting K.G. After his conviction, Van Buren petitioned for post-conviction relief from the district court. In his petition, Van Buren makes a number of allegations. He alleges that the admission of testimony that others believed K.G. when she reported Van Buren's sexual assaults to them constituted inadmissible vouching testimony, that admission of this testimony was prejudicial because it bolstered K.G.'s credibility, that three prosecution witnesses engaged in misconduct, that the trial court improperly allowed the complaint to be amended, that a prior statement of K.G.'s was improperly admitted, and that his trial counsel provided ineffective assistance. The post-conviction court denied relief, and the court of appeals affirmed. On appeal, Van Buren seeks to have this court set aside the convictions and order a new trial based on his contention that: (1) he was denied due process of law and a fair trial by the admission of testimony that others believed K.G.'s sexual assault accusations, thus improperly "vouching" for K.G.'s credibility; (2) the state committed prosecutorial misconduct when the prosecutor personally endorsed the credibility of witnesses and argued the vouching testimony during closing argument; and (3) witness misconduct by K.G. and two other state witnesses prejudiced the jury's decision. Because we conclude that Van Buren was denied a fair trial by the admission of prejudicial vouching testimony, we reverse the court of appeals and remand for a new

---

1. Pursuant to Minn.Stat. § 609.035 (1994), Van     Buren was not sentenced for his conviction un-

trial.[2]

In May 1992, 14–year–old K.G. moved from her mother's home in Wisconsin to Minneapolis, Minnesota, to live with her mother's sister, Cathy McLaughlin. Sometime in June 1992, K.G. began working for a business owned and operated by Van Buren and his wife, Michelle. Michelle Van Buren is also a sister of K.G.'s mother. The business provided cleaning services for Twin Cities area office buildings and car dealerships. The work often required K.G. to work alone at night with Van Buren.

At trial, K.G. testified that Van Buren sexually assaulted her on six different occasions between June and September 1992. According to K.G.'s testimony, the sexual assaults included forced intercourse on three occasions, fondling, and one attempt by Van Buren to force her to give him oral sex.[3] K.G. asserted that after one of the incidents, she received an extra $100 with her regular pay, and, after another incident, Van Buren offered her $50 for "two minutes."

In her testimony, K.G. indicated that one or two weeks after the second incident, she told a neighborhood friend, 12–year–old J.P., that Van Buren had raped her. J.P. told her that she should tell somebody; however, K.G. did not tell anyone else until after the last incident occurred. She testified that she did not tell anyone because she did not think she would be believed; she was concerned that Michelle Van Buren would "lose her job and her family"; she thought that she would get in trouble or be blamed; and she did not want to be sent back to Wisconsin.

Van Buren testified in his own defense at trial. He admitted working with K.G. during the time period in question, but denied all of her sexual assault allegations. The defense's

theory of the case was that K.G. fabricated the allegations after Van Buren took back a motor scooter that he and his wife Michelle had sold her.[4] There was very little independent corroborating evidence presented at trial. The only corroborating evidence which was presented came from Cathy McLaughlin and Michelle Van Buren and primarily supported Van Buren's theory of the case.

The central issue at trial was the credibility of K.G. and Van Buren. To bolster K.G.'s credibility, the prosecution elicited testimony from K.G., J.P., and one of the investigating police officers, Detective Randy Thompson, that certain members of K.G.'s family believed K.G.'s story that Van Buren had sexually assaulted her. The prosecutor, over defense counsel's hearsay objection, asked K.G. whether Michelle Van Buren believed her when told that Van Buren had raped her at work. K.G. responded that Michelle Van Buren did believe her. When questioning J.P., the prosecutor asked J.P. who, if anybody, believed K.G.'s story. J.P. testified that Michelle Van Buren did not believe K.G.'s story, but that K.G.'s mother, Jackie Waterbury, along with Cathy McLaughlin and some other family members, did believe K.G. Finally, the prosecutor elicited testimony from Detective Thompson that K.G. told him that Michelle Van Buren believed her story. To further bolster K.G.'s credibility, the prosecutor, during closing argument, emphasized to the jury K.G.'s and Detective Thompson's testimony that others believed K.G.

The post-conviction court, while noting that the vouching testimony was troubling, denied post-conviction relief. The court of appeals affirmed, holding that the testimony

---

der Minn.Stat. § 609.342, subd. 1(g).

**2.** Because our resolution of the vouching issue is dispositive of this case, we need not, and therefore do not, address Van Buren's other claims.

**3.** K.G.'s trial testimony was at times vague and also inconsistent with her prior statements. For example, in a pre-trial statement to a defense investigator, K.G. said that she had "sex" with Van Buren five times. During the trial, K.G. could not remember important details such as when some of the incidents took place, the de-

tails of some of the incidents, or which incidents occurred where. She was unsure when the last incident took place; however, she was sure that the first one occurred sometime in June.

**4.** Sometime in late August or early September 1992, K.G. arrived home one afternoon and found the Van Burens taking away her motor scooter. K.G. became very angry, hit Van Buren with a helmet, and threatened him. Later that day, K.G. told Michelle Van Buren about the alleged sexual assaults.

was not vouching testimony per se, was not objected to, and was nonprejudicial.

▇▇▇ As a threshold matter, we note that, with the exception of one hearsay objection, defense counsel failed to object to the complained-of testimony. Generally, failure to object to evidence at trial constitutes waiver of those issues on appeal. *State v. Beard,* 288 N.W.2d 717, 718 (Minn.1980). However, notwithstanding a defense counsel's failure to object at trial, this court will consider plain error affecting substantial rights if the error had the effect of denying the defendant a fair trial. *State v. Williams,* 525 N.W.2d 538, 544 (Minn.1994); Minn. R. Evid. 103(d) ("Nothing in this rule precludes taking notice of error in fundamental law or of plain errors affecting substantial rights although they were not brought to the attention of the court."). The test for determining plain error is "whether there was or was not a reasonable likelihood that any error substantially affected the verdict." *State v. Glidden,* 455 N.W.2d 744, 747 (Minn.1990). Because we conclude that there is a reasonable likelihood that any error substantially affected the verdict, we review Van Buren's claims.

In *State v. Maurer,* 491 N.W.2d 661 (Minn. 1992), we specifically addressed the issue of the admission of vouching testimony in a sexual assault case. We held that while the trial court erred in admitting vouching testimony from four witnesses who testified that the complainant was "sincere" in her complaint, the error was harmless beyond a reasonable doubt because "one would expect [such] witnesses to say" that the complainant was sincere. *Id.* at 662. The defendant in *Maurer* filed a habeas corpus petition in federal court. *Maurer v. Department of Corrections,* 32 F.3d 1286 (8th Cir.1994). Ultimately, the Eighth Circuit Court of Appeals granted a new trial on the ground that the defendant was denied a fair trial. *Id.* at 1291. In doing so, the Eighth Circuit rejected our harmless error reasoning as "circular." The court noted that "[o]ne would only expect a witness to testify that a victim's complaints were sincere if one assumed that the victim had been raped." *Id.* at 1290. The court stated:

> The expectation assumes the ultimate issue. If one assumed that a victim had not

been raped, one would not expect the witness to respond that a victim was sincere. Thus, in a case such as this, where the jury was required essentially to weigh one person's word against another's, the answers to such questions were not foregone conclusions minimally affecting the determination of which story to believe. The answers to such questions were among the few external facts on which the jury had to hang its collective hat.

*Id.*

Van Buren argues that the instant case is governed by the Eighth Circuit's decision in *Maurer.* He notes that, as in *Maurer,* the prosecutor intentionally elicited improper vouching testimony, that the central issue in the case was credibility, and, as a result, the testimony was highly prejudicial. Van Buren also claims that the emphasis placed on the testimony by the prosecutor during closing argument exacerbated the prejudicial effect of the testimony.

The state contends that this case is distinguishable from *Maurer* because no witness directly testified that he or she believed K.G.'s story. Thus, the state argues that no direct vouching occurred or, alternatively, that if vouching occurred, it was relevant and admissible because the witnesses' testimony illustrated K.G.'s state of mind as to why she did not immediately report the assaults. The state further argues that the testimony and the prosecutor's reference to it during the closing argument was relevant to K.G.'s state of mind and necessary to explain why K.G. delayed in reporting the alleged assaults.

▇▇▇ We believe the Eighth Circuit's decision in *Maurer* controls the outcome of this case. Thus, we conclude that, under the facts and circumstances presented here, improper vouching testimony was admitted at trial and, as a result, Van Buren was denied a fair trial. As in *Maurer,* the prosecutor here intentionally elicited vouching testimony during trial and then used it in closing argument to bolster K.G.'s credibility. The evidence of Van Buren's guilt in this case was close, and the jury's verdict hinged on who the jury found more credible, K.G. or Van Buren. We find unpersuasive the state's argument that the testimony did not consti-

tute direct vouching because witnesses testified to what they believed others believed. In fact, vouching testimony by way of hearsay is more troubling than "direct" vouching because, where the vouching testimony comes in by way of hearsay, the person whose beliefs are at issue cannot be cross-examined with respect to those beliefs. Although the state asserts that the testimony was necessary to show K.G.'s state of mind as to why she did not report Van Buren's sexual assaults sooner, we fail to see how what other people believed about whether the sexual assaults took place sheds any light on K.G.'s state of mind. While it was proper for the prosecution to inquire about K.G.'s reasons for her delay in reporting, it was unnecessary for the prosecution to establish that people believed K.G. when she told them about her allegations against Van Buren. Whether others believed K.G.'s story about Van Buren's sexual assaults had no probative value and should have been excluded under Minn. R. Evid. 402.

We therefore reverse the court of appeals and remand to the district court for a new trial.

Reversed and remanded.

BLATZ, J., took no part in the consideration or decision of this case.