*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1338**

State of Minnesota,
Respondent,

vs.

Wilfred Carl Hudson,
Appellant.

**Filed July 20, 2015
Affirmed
Hudson, Judge**

Clay County District Court
File No. 14-CR-12-3371

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Pamela Harris, Assistant County Attorney, Moorhead, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Hudson, Judge; and Chutich, Judge.

## UNPUBLISHED OPINION

**HUDSON**, Judge

        Appellant challenges his convictions of three counts of first-degree criminal sexual

conduct.  He argues that Minn. Stat. § 595.02, subd. 4 (2012), which permits child

victims of sexual assault to testify outside of the defendant's presence, is unconstitutional because it violates his constitutional right to confront witnesses against him. He also contends that the district court committed plain error by permitting the state to introduce evidence vouching for another witness's credibility, that the district court erred in finding that his three offenses did not arise out of the same behavioral incident, and that the district court abused its discretion by denying his petition for postconviction relief. We affirm.

## FACTS

Appellant Wilfred Carl Hudson and S.F. are married and share parenting responsibilities for appellant's daughter, B.W. Approximately one year after they were married, S.F. and appellant separated; B.W. began to live with S.F. during the week and with appellant on weekends. B.W. also stayed with appellant after school if S.F. had to work late.

In September 2012, a few months after appellant and S.F. separated, B.W. told S.F. that appellant "hurts [her] down there" and pointed to her vagina. S.F. testified that B.W. later told her that appellant had put his mouth on her vagina. S.F. reported B.W.'s allegations to law enforcement officers, who subsequently conducted a forensic interview and sexual assault examination of B.W. She told the interviewing detective that appellant had engaged in oral, vaginal, and anal intercourse with her on separate occasions. She indicated that the abuse occurred in appellant's bedroom, her bedroom, and the living room of appellant's apartment. B.W. was eight years old at that time.

Appellant was arrested and charged with eight counts of first-degree criminal sexual conduct.[1] Prior to trial, the state moved, pursuant to Minn. Stat. § 595.02, subd. 4, for an order permitting B.W. to testify outside of appellant's presence and via one-way, closed-circuit television. The district court granted the order, finding that B.W. would be traumatized if she was required to testify in appellant's presence. Appellant, the district court, and the jury observed B.W.'s testimony from a separate room, and B.W. was informed that appellant was watching her testimony. Appellant's counsel was in the room with B.W. and was allowed to cross-examine her. B.W. testified that appellant engaged in vaginal intercourse with her in her bedroom and anal intercourse with her in his bedroom. She also stated that appellant "licked" the "inside" of her vagina on multiple occasions. She said that appellant told her that if she told her mother, he "would break [S.F.] into pieces of bones."

Appellant testified that he never abused B.W. He stated that S.F. coached B.W. to falsify allegations against him and that B.W. imitated "whatever [S.F.] [did]." He indicated that S.F. had previously threatened to report false child abuse allegations to law enforcement. The jury found appellant guilty of the first three counts of criminal sexual conduct and not guilty of the remaining four counts. The district court imposed concurrent, respective prison sentences of 172, 201, and 360 months for the three offenses.

Appellant filed a notice of appeal, but subsequently stayed that appeal to file a petition for postconviction relief. In his petition for postconviction relief, he alleged that

---

[1] Count eight was dismissed before trial.

he had located a witness, S.B., who could offer new testimony regarding S.F.'s bias. At the subsequent evidentiary hearing, S.B. testified that he had been in a relationship with S.F. while she was married to appellant, and that S.F. asked him and several other people to kill appellant so that she could obtain an insurance settlement that she believed that appellant was entitled to receive. He also stated that S.F. believed that obtaining custody of B.W. would assist her in obtaining the insurance settlement. The district court found that S.B.'s testimony was not credible and denied the petition for postconviction relief. We dissolved the stay of appeal and ordered briefing on all postconviction issues. This appeal follows.

## D E C I S I O N

### I

Appellant argues that the district court erred by permitting B.W. to testify outside of his presence via one-way, closed-circuit television.[2] A child witness who is a victim in a criminal sexual conduct case may testify outside the presence of the defendant if the child is less than 12 years old and the district court finds that the defendant's presence "would psychologically traumatize the witness so as to render the witness unavailable to testify." Minn. Stat. § 595.02, subd. 4(c). The district court may permit a child to testify via closed-circuit television only after making an "individualized finding of necessity"

---

[2] At the outset, the state argues that appellant forfeited this argument because he did not raise it to the district court and because he did not provide notice to the attorney general of his constitutional challenge. But appellant argued to the district court that, although Minnesota law permitted testimony in a room outside the presence of the defendant, the state and federal confrontation clauses guaranteed him the right to confront witnesses. And separate notice is not required to the attorney general where, as here, the state is a party to the litigation. Minn. R. Civ. App. P. 144. Appellant's argument is not forfeited.

and having found "by specific evidence that the particular witness is or would be psychologically traumatized and that traumatization is substantially caused by the presence of the defendant." *State v. Conklin*, 444 N.W.2d 268, 272, 274 (Minn. 1989). Here, the district court made detailed findings regarding the evidence that supported its conclusion that B.S. would be psychologically traumatized if forced to testify in appellant's presence.

Appellant contends, however, that because Minn. Stat. § 595.02, subd. 4, permits witnesses to testify outside of the defendant's presence, it violates the Sixth Amendment's guarantee that a criminal defendant has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. We review de novo whether a statute is unconstitutional. *State v. Cox*, 798 N.W.2d 517, 519 (Minn. 2011). We presume that Minnesota statutes are constitutional and we exercise our authority to declare a statute unconstitutional with "extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn. 1989).

The United States Supreme Court has previously considered whether the Confrontation Clause prohibits a child witness in a sexual abuse case from testifying outside the presence of the defendant by one-way, closed-circuit television. *Maryland v. Craig*, 497 U.S. 836, 851–52, 110 S. Ct. 3157, 3166–67 (1990). The Court explained that though the Confrontation Clause reflected a preference for face-to-face confrontation at trial, that preference "must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849, 110 S. Ct. at 3165 (quotation omitted). Accordingly, the Court determined that face-to-face confrontation was not

5

constitutionally mandated if (1) the denial of face-to-face confrontation was necessary to further an important public policy and (2) the reliability of the testimony was assured by other means. *Id*. at 850, 110 S. Ct. at 3166. Because the state had a substantial and important interest in the physical and psychological well-being of child-sexual-abuse victims, and because testimony via closed-circuit television ensured the reliability of the child's testimony by permitting cross examination, testimony under oath, and an opportunity for the judge, defendant, and jury to assess the child's demeanor, the Court concluded that face-to-face confrontation was not required if the district court made a case-specific finding that such confrontation would cause a child witness trauma from testifying. *Id*. at 851–53, 110 S. Ct. at 3166–67.

Appellant concedes that Minn. Stat. § 595.02, subd. 4, is constitutional under *Craig*, but argues that *Craig* has since been overruled by the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004). In *Crawford*, the Court rejected the use of "open-ended balancing tests" to determine whether the admission of out-of-court testimonial statements violated a defendant's confrontation rights, instead concluding that such evidence was admissible only when the witness was unavailable and the defendant had a prior opportunity for cross-examination. *Id*. at 67–68, 124 S. Ct. at 1373–74. The Court explained that the Confrontation Clause was a procedural guarantee that required the reliability of evidence "be assessed in a particular manner: by testing in the crucible of cross-examination." *Id*. at 61, 124 S. Ct. at 1370. Appellant asserts that *Crawford*'s rejection of open-ended balancing tests to determine the admissibility of

evidence under the Confrontation Clause renders the analysis established by *Craig* invalid and Minn. Stat. § 595.02, subd. 4, unconstitutional.

We disagree. The Supreme Court did not expressly state in *Crawford* that it intended to overrule *Craig*. Indeed, the majority opinion does not cite to *Craig* once, and the concurring opinion cites to it only for the proposition that cross-examination is a necessary tool "used to flesh out the truth." *Crawford*, 541 U.S. at 74, 124 S. Ct. at 1377 (Rehnquist, C.J., concurring). Rather, the Court explains that it is expressly rejecting the rationale of its previous decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531 (1980). *See id.* at 63–64, 124 S. Ct. at 1371 (majority opinion). When the Supreme Court expressly overrules one case in a decision, we do not assume that it implicitly intended to overrule a separate decision as well. *Carmell v. Texas*, 529 U.S. 513, 538, 120 S. Ct. 1620, 1636 (2000); *see also United States v. Pack*, 65 M.J. 381, 383 (C.A.A.F. 2007) (stating that "overruling by implication is disfavored"). We also recognize that several state and federal courts have concluded that *Craig* remains good law following *Crawford* and that the Supreme Court has denied a petition for a writ of certiorari in at least one of those cases. *See Pack*, 65 M.J. at 385 (collecting cases), *cert denied*, 552 U.S. 1313, 128 S. Ct. 1914 (2008). Under these circumstances, we cannot conclude that the Supreme Court intended for *Crawford* to overrule *Craig*.

Our conclusion is also reinforced by the fact that *Crawford* and *Craig* apply to separate and distinct confrontation issues. *Crawford* sets forth the standard for determining whether the admission of an *out-of-court* statement implicates a defendant's right to confront the declarant of that statement. 541 U.S. at 68, 124 S. Ct. at 1374. In

contrast, *Craig* governs the method by which in-court testimony may be presented: specifically, under what circumstances the Sixth Amendment's preference for face-to-face confrontation is outweighed by state interests. 497 U.S. at 860, 110 S. Ct. at 3171. Those distinctions are significant. When a precedent of the Supreme Court "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions," we are to "follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 1921–22 (1989). Because *Crawford* and *Craig* address different aspects of a defendant's confrontation rights, and because *Craig* directly controls the issue before us, we conclude that *Craig* continues to apply when determining whether an exception to the Confrontation Clause's preference for face-to-face confrontation is constitutionally valid.

Finally, we conclude that *Craig* remains valid following *Crawford* because it is consistent with *Crawford*'s mandate that the reliability of testimonial evidence be evaluated by "the crucible of cross-examination." *Crawford*, 541 U.S. at 61, 124 S. Ct. at 1370. Under *Craig*, the Court concluded that in-court testimony was reliable only when the "combined effect of [the] elements of confrontation" was met, which could include physical presence, an oath, cross-examination, or observation of demeanor by the trier of fact. *Craig*, 497 U.S. at 846, 110 S. Ct. at 3163. Like *Crawford*, *Craig* holds that cross-examination is the primary means of confrontation guaranteed by the Sixth Amendment. *See Pack*, 65 M.J. at 384 (explaining that the focus of *Craig* on the "combined effect of the[] elements of confrontation . . . was retained in *Crawford*") (quotation omitted). For

8

those reasons, we conclude that *Craig* remains good law, that Minn. Stat. § 595.02, subd. 4, is constitutional, and that the district court did not err by permitting B.W. to testify outside of appellant's presence.

## II

Appellant also argues that the district court erred by permitting the state to introduce testimony and out-of-court statements from an investigating detective who vouched for the credibility of B.W. Prosecutors may not elicit vouching testimony from trial witnesses. *Van Buren v. State*, 556 N.W.2d 548, 551 (Minn. 1996). Improper vouching testimony is testimony that another witness is telling the truth or that one believes one witness over another. *State v. Ferguson*, 581 N.W.2d 824, 835 (Minn. 1998). "Bolstering a witness's credibility exceeds the proper bounds of aiding the jury to reach conclusions about matters not within its experience. Witness credibility determinations are strictly the domain of the jury." *State v. Blanche*, 696 N.W.2d 351, 374 (Minn. 2005).

Because appellant did not object to the admission of the detective's statements and testimony at trial, we consider only whether the admission of that evidence constituted plain error. Plain error exists if there is an error, the error is plain, and the error affects substantial rights. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). An error is plain if it is clear or obvious, meaning that it contravenes a rule, case law, or standard of conduct, or disregards a well-established and longstanding legal principle. *State v. Brown*, 792 N.W.2d 815, 823 (Minn. 2011). An error affects a defendant's substantial rights if there is a reasonable likelihood that the error substantially affected the jury's

verdict. *Id.* at 824. If those three elements are met, we determine whether reversal is necessary to protect the fairness and integrity of the judicial proceedings. *Ramey*, 721 N.W.2d at 302.

Appellant first challenges several statements that the detective made during his testimony regarding his interview with B.W. Appellant argues that admission of that testimony was plainly erroneous because the detective indicated that he was assessing B.W. for reliability, credibility, and believability. But a review of the record indicates that, in each of those instances, the detective did not express an opinion that B.W. was telling the truth or that B.W. was more credible than another witness. Instead, the detective simply explained the process by which he interviewed B.W. and the methods that he used to corroborate B.W.'s statements. Because the detective did not offer an opinion regarding B.W.'s credibility, the admission of those statements was not plain error.

Appellant also argues that the following three statements, which the detective made after the jury watched the video of his interview with B.W., constitute impermissible vouching testimony: "[B.W.] was able to understand the difference between truth and lie"; "[B.W.] would correct me or she would say she doesn't know or doesn't remember or – very, very credible"; and "[B.W.'s] mother corroborated all of the information, yeah, about what the child had said, which adds, yeah, [to] the reliability of the child." Of those three challenged statements, the second and third relate to the detective's personal assessment of B.W.'s credibility and thus could be viewed as impermissible vouching testimony. But we need not decide whether the admission of

10

those statements constituted plain error because, even if it did, the error did not affect appellant's substantial rights. *See State v. Jackson*, 714 N.W.2d 681, 690 (Minn. 2006) ("If any prong of the [plain-error] test is not met, the claim fails.").

Here, appellant and B.W. both testified at trial, providing the jury an opportunity to weigh each person's credibility. *See State v. Wembley*, 712 N.W.2d 783, 792 (Minn. App. 2006) (holding that expert's testimony violated vouching prohibition but was not unfairly prejudicial because the jury was able to independently judge child witness's credibility), *aff'd,* 728 N.W.2d 243 (Minn. 2007). In addition, the two troublesome statements are only a small portion of the record. And the state did not rely on either statement at closing argument, but instead argued that the jury's assessment of B.W.'s credibility should be based on their "observations of [B.W.'s] ability to relay . . . information to you." *Cf. Van Buren v. State*, 556 N.W.2d at 551 (holding that vouching testimony deprived defendant of fair trial because prosecutor used it in closing argument to bolster complainant's credibility and the evidence of guilt was "close," hinging entirely on credibility of witnesses). Moreover, appellant challenged B.W.'s credibility in closing argument and the jury found appellant not guilty of four of the seven charges, suggesting that it was not swayed by any impermissible vouching testimony. Thus, the alleged errors did not affect appellant's substantial rights.

Finally, appellant contends that the detective made several statements vouching for B.W.'s credibility during his post-arrest interview of appellant, a tape of which the jury observed at trial. But plain error cannot be established in the absence of binding precedent. *State v. Jones*, 753 N.W.2d 677, 689 (Minn. 2008). And case law does not

11

expressly prohibit the admission of vouching statements that an officer made to a defendant during a police interrogation. Instead, the Minnesota Supreme Court has explained that the admission of statements made by an officer during a police interrogation are necessary to provide context to the defendant's statements and that juries will understand that those statements are made to "get as much information from [the defendant] as possible." *State v. Lindsey*, 632 N.W.2d 652, 662–63 (Minn. 2001); *State v. Ferguson*, 581 N.W.2d at 835–36. Here, because the jury was informed that the video depicted the detective's interview of appellant, the jury had the necessary information to understand that the detective's statements were made as an investigative technique and were not necessarily indicative of his personal opinion. As a result, the district court's failure to sua sponte exclude those statements did not constitute plain error.

## III

Appellant also argues that the district court erred by finding that the three offenses for which he was convicted did not arise out of the same behavioral incident. A person who commits multiple offenses against the same victim during a single behavioral incident may be punished for only one of the offenses. Minn. Stat. § 609.035, subd. 1 (2012). The state bears the burden to establish by a preponderance of the evidence that the conduct underlying the offenses did not occur as part of a single behavioral incident. *State v. Williams*, 608 N.W.2d 837, 841–42 (Minn. 2000). A district court's determination that a defendant's offenses did not arise out of a single behavioral incident

12

is a factual finding, which we review for clear error. *State v. Suhon*, 742 N.W.2d 16, 24 (Minn. App. 2007), *review denied* (Minn. Feb. 18, 2008).

To determine whether a series of offenses constitutes a single behavioral incident, we consider whether the offenses share unity of time and place and "whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective." *State v. Marchbanks*, 632 N.W.2d 725, 731 (Minn. App. 2001). A defendant who engages in multiple forms of sexual penetration during the same behavioral incident may be convicted of only one offense for that conduct. *State v. Dudrey*, 330 N.W.2d 719, 721–22 (Minn. 1983). But multiple acts against the same victim do not constitute a single behavioral incident when those acts are separated by time and place, even if the motivation for each act is the same. *Suhon*, 742 N.W.2d at 24.

Here, the jury found appellant guilty of three counts of first-degree criminal sexual conduct. Count one alleged an incident of oral intercourse; count two alleged an incident of anal intercourse; and count three alleged an incident of vaginal intercourse. At sentencing, the district court found that the acts underlying the three counts for which appellant was convicted arose out of different behavioral incidents because those acts occurred in different rooms and on different days.

The district court's findings are not clearly erroneous. B.W. testified that appellant engaged in several different forms of sexual penetration, that the abuse happened at different times, and that it occurred in different rooms of appellant's apartment. *See Suhon*, 742 N.W.2d at 24 (upholding multiple sentences when abuse occurred in same residence, but "happened in many different rooms and at different

13

times"). B.W. also informed the detective about specific incidents of abuse, including the first time the abuse began and an incident that occurred on a day that she was supposed to be attending a friend's birthday party. She also told the detective that the abuse occurred in appellant's bedroom, her bedroom, and the living room. Taken together, the evidence is sufficient to support the district court's finding that appellant's offenses arose out of separate behavioral incidents. *See State v. Stevenson*, 286 N.W.2d 719, 720 (Minn. 1979) (affirming sentence for two counts of criminal sexual conduct for two contacts five hours apart). As a result, the sentence imposed was not erroneous.

## IV

Finally, appellant argues that the district court erred by denying his petition for postconviction relief following an evidentiary hearing. A person convicted of a crime who claims his conviction was obtained in violation of his constitutional rights "may commence a proceeding to secure relief." Minn. Stat. § 590.01, subd. 1 (2012). We review a denial of a petition for postconviction relief for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). In considering a postconviction court's decision to deny relief, we review issues of law de novo and issues of fact for clear error. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007); *Riley*, 819 N.W.2d at 167.

Appellant argues that S.B.'s testimony constitutes newly discovered evidence that entitles him to a new trial. A new trial may be granted based upon newly discovered evidence when a defendant proves:

> (1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before

14

> trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result.

*Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997). Appellant asserts that S.B.'s testimony warrants a new trial because it calls into question S.F.'s credibility.

The district court denied the petition because it found that the newly discovered evidence did not satisfy the materiality prong of the *Rainer* test. To meet the materiality prong, the defendant must demonstrate that the newly discovered evidence is credible. *Tscheu v. State*, 829 N.W.2d 400, 403 (Minn. 2013). Here, the district court found that S.B.'s testimony was not credible because it was not corroborated by any other evidence, it was internally inconsistent, and because S.B. had reason to lie given his friendship with appellant. Because we give broad deference to the district court's credibility findings, appellant must meet a "high threshold" to show that those findings were clearly erroneous. *Bobo v. State*, 860 N.W.2d 681, 684 (Minn. 2015) (quotation omitted). We do not disturb the district court's findings of fact if reasonable evidence supports those findings. *Id.* at 685.

Here, the record reasonably supports the district court's credibility findings. No corroborating evidence suggests that appellant was about to receive an insurance settlement, that S.F. believed that appellant was entitled to receive such a settlement, or that S.F. intended to obtain custody of B.W. for the purpose of claiming insurance proceeds. Likewise, no evidence in the record corroborates S.B.'s claim that S.F. asked multiple people to kill appellant. S.F. also testified that S.B. became friends with appellant after she moved out of appellant's apartment, and the district court did not

15

clearly err by finding that his friendship with appellant could cause S.B. to lie. We therefore conclude that the district court did not abuse its discretion in denying appellant's petition for postconviction relief.

**Affirmed.**