**STATE of Minnesota, Respondent,**

v.

**Michael John SUHON, Appellant.**

**No. A06–1240.**

Court of Appeals of Minnesota.

Dec. 4, 2007.

Lori Swanson, Attorney General, St. Paul, MN, and Michael O. Freeman, Hennepin County Attorney, Jean Elizabeth Burdorf, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Sara Lynne Martin, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; KALITOWSKI, Judge; and WORKE, Judge.

## OPINION

ROSS, Judge.

Michael John Suhon was accused of sexually assaulting his adopted daughter three times per week, fifty-two weeks per year, from the time the girl was about seven years old until she moved from his home soon after she turned 18. That is approximately one thousand, five hundred and sixty acts of vaginal penetration, oral sex, or sexually oriented fondling, throughout her entire childhood. The jury believed his daughter's account, and the district court sentenced Suhon to three consecutive prison terms totaling 278 months, which is 1,282 months fewer than he would have been imprisoned if the court had sentenced him to only one month for each assault alleged, or 554 months fewer than if the court had sentenced him to just one month for each assault as more conservatively estimated by the district court at 832 total assaults against the child. Suhon's appeal contends that the evidence does not support his conviction, that he was excessively charged with three counts of criminal sexual conduct, and that his sentence is illegally long. We conclude that the evidence supports the verdict, that the state acted within the scope of the statute and within its prosecutorial discretion by charging Suhon's conduct in three separate counts, and that the district court did not abuse its discretion by imposing separate consecutive sentences for the three convictions. We therefore affirm.

## FACTS

Appellant Michael Suhon was convicted of three counts of criminal sexual conduct for sexually abusing his adopted daughter, M.S. The abuse occurred over a ten-year period, from approximately 1994 to 2004.

According to M.S., Suhon began to sexually abuse her when she was seven or eight years old. The abuse began as sexual touching but quickly escalated to oral sex and, over M.S.'s complaints of pain, to vaginal intercourse. M.S. testified that Suhon subjected her to fondling and oral and vaginal intercourse regularly, approximately three times per week and in nearly every room of the family home. M.S. told no one of the sexual abuse while she was a child. After M.S. turned 18 and she moved from home, she told her mother,

D.K. M.S. and D.K. then reported the abuse to police.

The state charged Suhon with two counts of first-degree criminal sexual conduct under Minnesota Statutes section 609.342, subdivision 1(h)(iii), and one count of third-degree criminal sexual conduct under section 609.344, subdivision 1(g)(iii). Count I covered the alleged abuse from June 1994 to July 31, 2000, when M.S. was eight years old until just after her 14th birthday. Count II covered the period of abuse from August 1, 2000, to June 27, 2002, ages 14 and 15. Count III covered the abuse from June 28, 2002, to June 27, 2004, ages 16 and 17. A jury returned a guilty verdict for all three counts of criminal sexual conduct. Rejecting Suhon's argument that he was actually innocent and that his conduct constituted only one single behavioral incident under section 609.035, subdivision 1, the district court imposed permissive consecutive imprisonment sentences of 86 months, 144 months, and 48 months, for a total of 278 months' incarceration. This appeal follows.

## ISSUES

I. Was the evidence sufficient to convict Suhon of three counts of criminal sexual conduct?

II. Is the state restricted by limited statutory authority or prosecutorial discretion to charge a person with only one count of criminal sexual conduct for offenses committed during a ten-year span?

III. Did the district court clearly err when it found that the multiple sexual offenses constitutes more than one single behavioral incident or abuse its discretion when it imposed consecutive sentences?

## ANALYSIS

### I

 Suhon continues to maintain his innocence on appeal by pointing to inconsistencies in testimony and the lack of forensic evidence of abuse. We review a claim of insufficiency of the evidence to determine whether a factfinder could reasonably conclude that the defendant is guilty of the offenses charged beyond a reasonable doubt in light of the facts in the record and all the legitimate inferences that can be drawn in favor of conviction from those facts. *Davis v. State*, 595 N.W.2d 520, 525 (Minn.1999). Inconsistencies in prosecution evidence do not require reversal. *State v. Robinson*, 604 N.W.2d 355, 366 (Minn.2000). This court assumes that the factfinder believed the state's witnesses and disbelieved contrary evidence. *State v. Vick*, 632 N.W.2d 676, 690 (Minn. 2001).

 The facts in this record and the legitimate inferences discernible from those facts support the jury's findings of guilt. Construing the evidence in favor of the verdict, we credit M.S.'s testimony that the abuse began when she was seven or eight years old and that it usually occurred two or three times each week until she left the home. *See* Minn.Stat. § 609.347, subd. 1 (2004) (stating a victim's testimony alone may prove sexual assault without independent corroboration). Her testimony included supportive factual details. She described the initial assault, the frequency and location of the other assaults, and the force Suhon used if she resisted. She testified that Suhon was controlling; he spied on her during her lunch hour at school, followed her, and called her sexually derogatory names, like "slut" and "whore." She testified that after she first menstruated and complained to Suhon that he might impregnate her, he exposed his

vasectomy scar and explained that he had been "fixed."

Witnesses corroborated aspects of M.S.'s testimony. Her friends testified that Suhon spied on M.S. during her lunch hour and that he called her names, and they testified that she appeared to be afraid of him. D.K. testified that she once found Suhon and M.S. in the bathroom together and that Suhon had an erection. D.K. told the jury that she was also suspicious because of Suhon's control over M.S., his comments that M.S. and her friends were "hot," not "used equipment" like D.K., and the way he would lie on the couch with M.S. She gave police pornographic films that she found in the room where Suhon reportedly most frequently sexually abused M.S. She also turned over a pornographic magazine that was addressed to "M. Suhon" and that depicted teenage girls.

Forensic evidence also supports the guilty verdict. A towel M.S. identified at trial as one that she and Suhon used to clean themselves after intercourse was tested for DNA. A Bureau of Criminal Apprehension analyst testified that M.S.'s DNA was on the towel and that seminal fluid found on the towel matched a forensic sample from Suhon to a high degree of probability.

Suhon's contrary evidence does not compel a different outcome. The minor testimonial inconsistencies that Suhon highlights are insufficient to overcome our deference to the jury's role to weigh the evidence. *State v. Brocks,* 587 N.W.2d 37, 42 (Minn.1998) ("The jury is in the best position to ... weigh the evidence."). We acknowledge that Suhon's appendix to his brief includes 16 clearly heartfelt letters from family members and acquaintances supporting his good character and expressing disbelief at the accusations of abuse. It also includes a letter from a polygrapher opining that Suhon's denials were truthful. But letters of support are not evidence, and the polygraph results are also not admissible as evidence. *See* Minn. R. Evid. 404(a) (prohibiting use of character evidence to prove action in conformity with character); *State v. Opsahl,* 513 N.W.2d 249, 253 (Minn.1994) (holding that polygraph test results are inadmissible at trial). We hold that the jury received sufficient evidence to find that Suhon was guilty of sexually abusing M.S. as alleged. We next address Suhon's contention that the state abused its prosecutorial discretion by charging the offenses separately.

## II

Suhon contends that the state lacked the authority to charge him with three counts after dividing the offending conduct into three separate periods, arguing that Minnesota Statutes sections 609.342, subdivision 1(h)(iii), and 609.344, subdivision 1(g)(iii), do not permit division of an extended period of abuse for multiple convictions, that the state abused its discretion by so charging him, and that the state's charging decision violates due process because the statutory language did not fairly warn him that he might face multiple charges. All of Suhon's arguments depend primarily on statutory construction. We review issues of statutory construction de novo. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996). Our goal on review is to give effect to the legislature's intention. *Auringer v. State,* 695 N.W.2d 640, 643–44 (Minn.App.2005), *review denied* (Minn. July 19, 2005). We look primarily to the plain wording of the statute. *U.S. Specialty Ins. Co. v. James Courtney Law Office, P.A.,* 662 N.W.2d 907, 910 (Minn.2003). We disagree with Suhon that the state lacks authority to

charge a defendant with multiple counts under sections 609.342 and 609.344.

The state's authority to charge Suhon with multiple counts depends on the meaning of one of the elements of first-degree criminal sexual conduct. Depending on the victim's age, a person commits either first-degree or third-degree criminal sexual conduct by engaging in multiple acts of sexual abuse "committed over an extended period of time" with a minor who has a significant relationship with the offender. Minn.Stat. §§ 609.342, subd. 1(h)(iii), 609.344, subd. 1(g)(iii) (2006). Suhon contends that these statutes do not authorize dividing a continuous "extended period of time" into shorter, multiple periods of time and consequently charging separate counts for each segmented period. The contention is misdirected.

The statutes do not define "extended period of time," and we accept the phrase as meaning what its general and plain terms imply. *See* Minn.Stat. § 645.08 (directing that words in a statute should be given common meaning). With that understanding, for our purposes both parties recognize that the ten years of abuse constitutes an "extended period of time" under the statutes. But it is equally important that Suhon does not dispute that the three charged periods that total the ten years of abuse each individually constitutes an "extended period" (about six years, two years, and two years, respectively). *Cf. State v. Williams*, 363 N.W.2d 911, 914 (Minn.App.1985) (affirming appellant's conviction for first-degree intrafamilial sexual abuse, now incorporated into Minn.Stat. § 609.342, for acts occurring over a two-year period), *review denied* (Minn. May 1, 1985). So although Suhon is correct that the statute does not "explicitly provide for multiple convictions" by *dividing* a single "extended period of time" into several periods, he fails to consider that the statutes also do not explicitly or impliedly prohibit separately charging three offenses that could each independently constitute its own extended period of abuse. The same calendar of events that Suhon relies on to support his characterization that the charges have effectively *divided* a single extended period into three, also supports the alternative conclusion that the counts have merely aligned three separately chargeable consecutive extended periods that in this case happen to be contiguous.

Considered another way, Suhon's theory would lead to the absurdity that more intensive and active sex offenders would be charged more leniently than those who exercise periodic restraint. By his reasoning, if Suhon had sexually abused his daughter only half as many times by remaining entirely abuse-free during every other year, for example, he would have faced five counts under the statutes for his abuse during the five discretely severable "extended periods" of one-year each, while the uninterrupted ten years of abuse that he actually perpetrated would result in but one count. That "the legislature did not … limit … the length of time that could be appropriately included in one offense," as he argues, is therefore not controlling. More important here than the fact that ten years might constitute a single extended period is that six years and two years also individually constitute extended periods. Suhon does not argue that the statutes generally preclude charging a defendant with separate counts for each extended period of abuse. We hold that sections 609.342, subdivision 1(h)(iii) and 609.344, subdivision 1(g)(iii), which permit the state to charge multiple counts for each extended period of abuse, do not preclude multiple charges merely because the multiple periods might alternatively constitute a

single, longer period.[1]

We next consider Suhon's argument that charging him with separate counts was an abuse of prosecutorial discretion. The state contends that Suhon waived this argument by failing to raise it before sentencing. Failure to raise issues at trial generally constitutes waiver of those issues on appeal. *State v. Beard*, 288 N.W.2d 717, 718 (Minn.1980). But Suhon did raise the argument at his sentencing, asserting that the state impermissibly severed his offense into identical charges for separate time periods. Because we find that Suhon raised the argument, we address the state's discretion to charge him with multiple counts of criminal sexual conduct.

The executive branch determines whom to prosecute and what to charge. *Johnson v. State*, 641 N.W.2d 912, 917 (Minn.2002). In the absence of limiting statutory language, a court gives deference "to the prosecutor's discretion to evaluate the facts of a case, which may lead to various combinations of charges, and to select the particular charges best suited to achieve justice." *State v. Richardson*, 633 N.W.2d 879, 884 (Minn.App. 2001). A court generally should not interfere with the state's charging decision. *State v. Foss*, 556 N.W.2d 540, 540 (Minn. 1996); *State v. Perleberg*, 736 N.W.2d 703, 706 (Minn.App.2007), *review denied* (Minn. Oct. 16, 2007). Judicial interference should be rare and occur only when an injustice results because the prosecutor has clearly abused her discretion in exercising the charging function. *Foss*, 556 N.W.2d at 541. Suhon has not demonstrated an abuse of discretion.

In a dispute decided after we received the briefing in this case, we rejected a similar challenge to a prosecutor's charging decision. In *Perleberg*, as here, the appellant contested the state's decision to charge multiple counts for criminal sexual conduct. *Perleberg*, 736 N.W.2d at 706. The appellant in that case sexually abused his daughter on more than 250 occasions, often in the family home. *Id.* The prosecutor charged him with six counts of abuse, including two under section 609.342, subdivision 1(h)(iii). This court highlighted the prosecutor's broad charging discretion and held that the state's charging decision did not render the conviction infirm. Suhon abused his daughter on at least 600 more occasions than the abuser in *Perleberg* abused his daughter. We see no abuse of discretion by the prosecutor's decision to charge Suhon with two counts of first-degree criminal sexual conduct and one count of third-degree criminal sexual conduct.

We also are unpersuaded by Suhon's contention that the state's charging decision violated due process because Suhon lacked fair warning that he could be charged with three counts of criminal sexual conduct. The concept of fair warning stems from the Due Process Clause, and its underlying principle is that no one "shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Bouie v. City of Columbia*, 378 U.S. 347, 351, 84 S.Ct. 1697, 1701, 12 L.Ed.2d 894 (1964) (quotation omitted). Minnesota Statutes sections 609.342 and 609.344 unequivocally prohibit sex with a child. As Suhon accurately concedes, the state could have charged him with one count of abuse under other provisions of the statutes for each time that he sexually assaulted his daughter. Suhon's no-fair-warning contention fails. We turn last to his sentencing challenge.

1. We recognize also that the victim's change in age can account for one of the two breaks in the ten-year period by application of sections 609.342 and 609.344.

## III

Suhon contends that because his conduct constitutes a single behavioral incident, the district court abused its discretion when it sentenced him consecutively for each of the three offenses for which he was convicted. We disagree with his characterization of the offenses. When a single behavioral incident results in the violation of multiple criminal statutes, the offender may be punished only for the most severe offense. Minn.Stat. § 609.035, subd. 1 (2006). This avoids exaggerating the criminality of the defendant's conduct and makes both punishment and prosecution commensurate with culpability. *State v. Johnson,* 653 N.W.2d 646, 651–52 (Minn.App.2002). In determining whether multiple offenses arise from a single behavioral incident, the court must consider whether the offenses (1) arose from a continuous and uninterrupted course of conduct, (2) occurred at substantially the same time and place, and (3) manifested an indivisible state of mind, or were motivated by a single criminal objective. *Id.; State v. Soto,* 562 N.W.2d 299, 304 (Minn.1997). The district court's finding that Suhon's offenses did not constitute a single behavioral incident is a factual determination, which this court reviews for clear error. *Effinger v. State,* 380 N.W.2d 483, 489 (Minn.1986).

The district court did not clearly err by finding that Suhon's abusive acts did not constitute a single behavioral incident. We highlight that the analysis focuses on the three offenses charged, not on the hundreds of individual acts of sex abuse, since the many acts were collectively charged as only three offenses within three identified periods of abuse. But even if we were to consider the acts individually, Suhon's argument is not persuasive. The incidents of sex abuse here occurred on a regular basis, but they do not combine to form a continuous course of conduct. Multiple acts against the same victim do not constitute a single behavioral incident when the individual acts are separated by time and place. *State v. Secrest,* 437 N.W.2d 683, 685 (Minn.App.1989), *review denied* (Minn. May 24, 1989). Here, days passed between the incidents, and sometimes up to a week. Although the abuse always occurred in the Suhon home, it happened in many different rooms and at different times. *See State v. McLemore,* 351 N.W.2d 927, 928 (Minn.1984) (rejecting single-behavioral-incident argument and affirming sentence for three separate counts of criminal sexual conduct for three separate contacts during one weekend); *State v. Stevenson,* 286 N.W.2d 719, 720 (Minn.1979) (affirming sentence for two counts of criminal sexual conduct for two contacts five hours apart). And this court has held under similar facts that "motivation by perverse sexual desires" is too broad to constitute a single criminal objective. *Secrest,* 437 N.W.2d at 685. Suhon's abuse did not constitute a single behavioral incident, and we hold that the abuse in three periods charged in separate counts covering different segments of the victim's childhood is not a single behavioral incident.

Permissive consecutive sentences are therefore appropriate. When the district court has discretion to impose consecutive sentences, we will uphold the sentences unless they are "disproportionate to the offense or unfairly exaggerate[ ] the criminality of the defendant's conduct." *Perleberg,* 736 N.W.2d at 705. The sentencing guidelines provide that consecutive sentences are permissive for multiple felony convictions of first-degree criminal sexual conduct and third-degree criminal sexual conduct, even when the offenses involve a single victim and a single course of conduct. Minn. Sent. Guide-

lines II. F, cmt. II.F.04, IV. The district court considered the nature of Suhon's offenses and the impact on the victim. The district court judge opined that in 36 years of experience, he had never seen such egregious sexual misbehavior as Suhon's estimated 832 acts of sexual abuse on his daughter. In *Perleberg*, we rejected a similar disproportionality argument, upholding a prison sentence that was 154 months longer than Suhon's sentence and on a father who perpetrated less than one-third Suhon's number of assaults. 736 N.W.2d at 705. The district court acted within its discretion when it found that Suhon's 278–month sentence is not disproportionate to his offense and does not exaggerate the criminality of his conduct.

## DECISION

We affirm the conviction and sentence. The evidence supports the jury's guilty verdict. Sections 609.342, subdivision 1(h)(iii), and 609.344, subdivision 1(g)(iii), permit multiple counts for separable extended periods of abuse even when those periods might alternatively be combined to constitute a single, longer extended period. The prosecutor acted within his discretion by charging Suhon with three counts of criminal sexual conduct for the multiple abuses over three identified periods. Suhon had ample statutory notice of the offending conduct and the consequences for sexually abusing a child, resolving his due process challenge. And the district court acted within its discretion when it imposed three consecutive sentences totaling 278 months in prison.

**Affirmed.**