*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1040**

State of Minnesota,
Respondent,

vs.

Frank John Rakowiecki,
Appellant.

**Filed March 23, 2026**
**Affirmed in part, reversed in part, and remanded**
**Jesson, Judge**[*]

Isanti County District Court
File No. 30-CR-23-310

Keith Ellison, Attorney General, Tara Reese Duginske, Assistant Attorney General, St. Paul, Minnesota; and

Jeffrey Edblad, Isanti County Attorney, Cambridge, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ede, Presiding Judge; Bentley, Judge; and Jesson, Judge.

**NONPRECEDENTIAL OPINION**

**JESSON**, Judge

In this appeal from convictions for first-degree criminal sexual conduct (CSC)

following a jury trial, we must decide whether the district court abused its discretion when

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

it denied appellant Frank John Rakowiecki's motion to introduce alternative-perpetrator evidence related to his brother, John Meryl Rakowiecki, who is the victim's father (father). The jury found Rakowiecki guilty as charged of three incidents of sexual penetration of his niece, a child under 13. We also must determine whether the district court erred in sentencing by imposing three sentences, related to the three counts of CSC, for a sentence totaling 648 months.

We conclude that the district court appropriately rejected Rakowiecki's proposed alternative-perpetrator evidence and correctly imposed three sentences. But because the 648-month sentence exaggerates his criminality, we reverse and remand with instructions to impose a sentence not exceeding 504 months. Accordingly, we affirm in part, reverse in part, and remand.

**FACTS**

In early 2023, the Chisago County Sheriff's office was notified of a child-protection matter involving allegations of sexual abuse against a child perpetrated by her father. The office conducted a forensic interview of three of father's daughters. M.R., the complainant in this case, reported that her uncle, Frank John Rakowiecki, was "way more abusive" than father. M.R. stated that Rakowiecki raped her about "once a week" for two years while he was babysitting her, beginning in September 2015. M.R. also stated that father had once groped her breasts over her clothing and engaged in sexual talk with her sometime in 2020 or 2021. During their respective interviews, M.R.'s sisters stated that father had sexually abused them at the family home while sitting on the "special spot" on a couch in the family living room.

Following the interview, respondent State of Minnesota charged Rakowiecki with three counts of first-degree CSC arising from the allegations that he sexually abused M.R. over a period of two years, when she was 10 to 11 years old. The charged acts focused on allegations that, while babysitting M.R. and her siblings at the family home, Rakowiecki "forced his penis into [M.R.'s] vagina" in her bedroom. The state's initial complaint included a single count of first-degree CSC but later amended the complaint to add two other counts of first-degree CSC. The complaint was amended a second time to clarify the timing of each count.

Central to this appeal are two pretrial motions by Rakowiecki, both denied by the district court. First, Rakowiecki moved to admit evidence of an alternative perpetrator. Rakowiecki's theory was that father sexually abused M.R. and that evidence of father's abuse of M.R. would support an alternative-perpetrator defense. Rakowiecki's proffer included evidence that father had sexually assaulted M.R. several years after the events in this case, was in the family home during the time frame relevant to M.R.'s allegations and had allegedly sexually abused M.R.'s sisters.[1] The district court denied Rakowiecki's motion.

Rakowiecki also moved to sever the charges, which the state opposed. The state argued that Rakowiecki would not be prejudiced by joining the three charged offenses, resulting in a single trial, because the evidence of each offense would be admissible at each

---

[1] In a separate court file, the state charged father with three counts of first-degree CSC and three counts of second-degree CSC for the sexual abuse he allegedly perpetrated against M.R. and two of her sisters.

trial. The state did not argue that the counts constituted a single behavioral incident. The district court denied Rakowiecki's motion because, for joinder purposes, it concluded that the three offenses are related under Minnesota Rule of Criminal Procedure 17.03, subdivision 3(1). The district court also concluded that trying the three charges together would not prejudice Rakowiecki.

The case proceeded to a jury trial. The jury returned guilty verdicts, and the district court entered judgments of conviction for each count. At sentencing, the district court imposed a top-of-the-box[2] guidelines sentence on count 1, and presumptive guidelines sentences on counts 2 and 3, totaling 648 months.[3]

Rakowiecki appeals.

## DECISION

**I.  The district court did not abuse its discretion when it determined that Rakowiecki's proffer did not inherently tend to connect father with the charged offenses.**

The Due Process Clauses of the United States and Minnesota Constitutions both guarantee a criminal defendant's right to present a complete defense. U.S. Const. amend. XIV; Minn. Const. art. I, § 7. This right includes "the right to introduce evidence showing that an alternative perpetrator committed the crime." *State v. Carbo*, 6 N.W.3d 114, 123 (Minn. 2024). The purpose of this evidence is to create a reasonable doubt that the

---

[2] "Each box in the Sentencing Guidelines grid contains a presumptive range and a presumptive duration. The longest and shortest terms in the presumptive range are commonly called the 'top of the box' and the 'bottom of the box.'" *State v. Morgan*, 968 N.W.2d 25, 28 n.2 (Minn. 2021) (citations omitted).

[3] The jury found aggravating factors on two of the counts but the district court declined to increase the guidelines sentences "because of the overall length of the sentence."

4

defendant is guilty of the crime charged.  *State v. Atkinson*, 774 N.W.2d 584, 590 (Minn. 2009).

But the right to present a complete defense "is not absolute."  *Id.* at 589.  In *State v. Hawkins*, the supreme court established a two-step process to determine the admissibility of alternative perpetrator evidence.  260 N.W.2d 150, 158-59 (Minn. 1977).  We review a district court's ruling, following this process, for an abuse of discretion.  *Carbo*, 6 N.W.3d at 123.

Our review begins with the first step in the *Hawkins* test, under which a defendant must offer foundational evidence that has "*an inherent tendency to connect*" the alternative perpetrator with the charged conduct.  260 N.W.2d at 159 (emphasis added) (quotation omitted).  To undertake this analysis, we "focus on the evidence, not the assertions, contained in the proffer."  *State v. Woodard*, 942 N.W.2d 137, 142 (Minn. 2020) (quotation omitted).  And we view the proffer as a whole.  *Carbo*, 6 N.W.3d at 124.

Rakowiecki's proffer included the following evidence:  father "was present in the home where M.R. lived during the time in which she alleges [Rakowiecki] was the perpetrator"; the allegations made by M.R.'s sisters about what father did to them "are similar to what [Rakowiecki] is alleged to have done to M.R., including removing the victim's clothing, rubbing their bodies with his hands, and inserting hands or his penis into their vaginas"; father "moved from one daughter to another and continued to use the same types of tactics to abuse his daughters, such as having them sit in the 'special spot' on the couch"; and M.R. alleged that father "sexually abuse[d] her and described over the clothing touching of her breasts."

5

The district court denied Rakowiecki's request to present broad statements from M.R. and her sisters about father's conduct. The court noted that Rakowiecki's proffer "undoubtedly present[s] facts tending to prove [father's] guilt for the offenses with which he is charged in [a separate court file], and contain similarities regarding time, location, and manner of the abuse [M.R.] alleges [Rakowiecki] committed against her." But the district court concluded that the proffered evidence fell "short of showing an inherent connection between [father] and this offense" because "other than the allegations against [father] involving the other children there is no evidence connecting him to the acts alleged to have been committed by . . . Rakowiecki in this case." To provide context for M.R.'s allegations against Rakowiecki arising from the forensic interview, however, the state was allowed to present evidence that father lived in the same house as M.R. between September 2015 and January 2017 and M.R.'s allegations that father groped her breasts and engaged in inappropriate sexual talk with her.

This conclusion—that there was no inherent tendency to connect father to the charged offenses here—was not an abuse of discretion. Certainly, Rakowiecki offered evidence that father was present in the home during the same time frame in which M.R. alleges Rakowiecki abused her. But father's presence at the home during the same time is not enough to inherently connect him to the commission of the charged offense. *See Atkinson*, 774 N.W.2d at 591-92 (concluding that evidence of the alternative perpetrator's location at the scene of the crime connected him only to the location of the crime, not the crime itself); *State v. Jenkins*, 782 N.W.2d 211, 227 (Minn. 2010) (stating that the defendant's evidence "at most established that [the alleged alternative perpetrator]

6

was present [at the crime scene] at some point on the night of the charged crime" but did not connect him to the crime).

And while the allegations made by M.R.'s sisters about what father did to them are, as the district court noted, "similar to what [Rakowiecki] is alleged to have done to M.R.," that father allegedly committed a similar crime against M.R.'s sisters—complainants in a different court file—does not inherently tend to connect father to the commission of *this* charged offense against M.R. *See Huff v. State*, 698 N.W.2d 430, 440-41 (Minn. 2005) (affirming a district court's decision to exclude evidence that an alleged alternative perpetrator murdered a different person, but not the victim, because the murders were dissimilar). And, aside from Rakowiecki's assertions, there is no evidence that father sexually assaulted M.R. in the same way and at the same time that father is alleged to have sexually assaulted M.R.'s sisters. *See Woodard*, 942 N.W.2d at 142 (stating that analysis of alternative-perpetrator evidence focuses on the proffered evidence, not assertions).

Nor does the allegation that father sexually abused M.R at a later time in a different house inherently connect him to the charges here. M.R. alleged during her forensic interview and her testimony at trial that father perpetrated two incidents of sexual abuse against her: he groped her breasts over her clothing and engaged in sexual talk with her. Both incidents allegedly occurred in 2020 or 2021 when the family lived with a family friend. In contrast, the conduct underlying the charges against Rakowiecki occurred between September 2015 and January 2017, making Rakowiecki's proffer appear like a "bare assertion[] as to what could have happened" based on father's later conduct. *See State v. Nissalke*, 801 N.W.2d 82, 102 (Minn. 2011). Accordingly, the district court's

7

determination that Rakowiecki's proffer on this point "[fell] short of showing an inherent connection between [father] and this offense" was not an abuse of discretion.

In sum, while the district court acknowledged the overlap and similarities between father's conduct against M.R.'s sisters, it concluded that the timing of events weakened Rakowiecki's proffer and ultimately did not inherently tend to connect him to the commission of the charged offenses here. This conclusion was not an abuse of discretion. As explained above, neither father's presence in the same location during the time that M.R. was abused, nor M.R.'s sisters' allegations against father, considered as a whole, inherently tend to connect father to the commission of this crime against M.R.[4]

To convince us otherwise, Rakowiecki contends that the district court applied the incorrect standard for admitting alternative-perpetrator evidence by requiring him to *conclusively* prove that father sexually abused M.R., rather than establish that the proffered evidence has an inherent tendency to connect father to the charged crime. He points to the following phrase, where the court stated that the proffered evidence, especially evidence indicating that Rakowiecki and father "lived under the same roof with the alleged victims, . . . *do not 'create a reasonable doubt* as to the defendant's guilt' as *they do nothing*

---

[4] We note that the state maintained at oral argument before this court that we may consider *all* the evidence—not just what is included in the proffer—in assessing whether Rakowiecki's proffer inherently tends to connect father to the charged offenses. This would include M.R.'s consistent identification of Rakowiecki as the perpetrator. Rakowiecki disagrees, arguing that we are limited to the proffer presented in the district court. We need not resolve this issue here. The district court did not rely on M.R.'s consistent identification in deciding the motion below. But certainly, were we to agree with the state, M.R.'s consistent identification of Rakowiecki as the perpetrator would further buttress the district court's decision here.

*to negate the specific claims* advanced by [M.R.]." (Emphasis added.) Rakowiecki argues that, with this sentence, the district court elevated the standard. The interpretation of our caselaw is a legal question that we review de novo. *State v. Robideau*, 796 N.W.2d 147, 150 (Minn. 2011).

Certainly, the purpose of introducing evidence of an alternative perpetrator is not to establish the alternative perpetrator's guilt. The purpose is to "create a reasonable doubt as to the defendant's guilt." *Atkinson*, 774 N.W.2d at 590. But upon reading the district court's order in its entirety, we conclude that the district court cited and applied the correct standard. The district court quoted *Atkinson* when it observed that Rakowiecki's proffer does "not 'create a reasonable doubt as to the defendant's guilt.'" The district court continued by stating that the proffer does "nothing to negate the specific claims advanced by [M.R.]." *See id.* We acknowledge that, read in isolation, the district court's phrasing—that Rakowiecki's proffer does "not 'create a reasonable doubt as to the defendant's guilt'" because the evidence "do[es] nothing to negate the specific claims advanced by [M.R.]"—suggests the district court required Rakowiecki to *prove* the connection between father and the charged conduct. *See Carbo*, 6 N.W.3d at 124 (stating that the first step of the *Hawkins* test does not demand "a definite and unequivocal connection to the commission of the crime"). But, in reading the whole of the district court's order, we conclude that the district court properly applied the *Hawkins* "inherent tendency to connect" standard. The court observed that there are "similarities regarding time, location, and manner" between father's conduct (for which he was charged in a separate court file) and the conduct M.R. alleged against Rakowiecki. But the district court concluded that, to find an inherent connection

9

between father and the charged offenses, the proffer rested on assumptions about M.R.'s credibility that were not part of the proffer. In sum the district court applied the correct standard under the first step in *Hawkins*.

Rakowiecki also argues that the proffered evidence is stronger than the circumstantial proffered evidence accepted as sufficient proof in *Carbo*, and as a result, his proffer meets the first step of the *Hawkins* "inherent tendency" test. He points out that here, father did not just think about sexually assaulting M.R.; "he *actually* sexually assaulted M.R. (and her sisters)." But this case is distinguishable from *Carbo*. In *Carbo*, a first-degree murder case, the proffer contained evidence directly tying the alleged alternative perpetrator to the underlying conduct in the charged offense. The alleged alternative perpetrator was with the victim the night that she was killed; an eyewitness observed a vehicle (driven by the alleged alternative perpetrator) near where the victim was found around the time the victim's screams were heard; hair consistent with the alleged alternative perpetrator was found in the victim's bedroom, where her body was found; and the alleged alternative perpetrator uttered a semi-inculpatory statement about killing the victim (that he "often wondered whether he woke up in the middle of the night and killed [the victim]"). *Carbo*, 6 N.W.3d at 123-24. The supreme court concluded that this evidence "clearly has an inherent tendency to connect [the alleged alternative perpetrator] with the actual commission of the crime" under *Hawkins*. *Id.* at 124 (quotation omitted).

But here, Rakowiecki's proffer does not connect father to the charged conduct. Instead, Rakowiecki's proffer seems to amount to other-acts or pattern evidence suggesting that father is a bad person because he sexually abused M.R. years after the events in this

case, sexually abused M.R.'s sisters, and was present in the family home during the time M.R. was sexually abused. Rakowiecki's proffer does not include an eyewitness account tying father to the charged offenses, forensic evidence linking father to the assaults against M.R., or any inculpatory statements. Rather, the only overlap between this situation and *Carbo* is that both alternative perpetrators were in close proximity to the victim (though for differing reasons) when the conduct underlying the charged offenses occurred. *See id.* And simply being present at a crime scene is insufficient to satisfy the first *Hawkins* step. *Troxel v. State*, 875 N.W.2d 302, 308-09 (Minn. 2016).[5]

Finally, at oral argument, Rakowiecki's appellate counsel suggested this case was analogous to *Jenkins* and *State v. Ferguson*, 804 N.W.2d 586 (Minn. 2011). Both cases are distinguishable. In *Ferguson*, the proffer included the following: the alleged alternative perpetrator had the same initials as the person identified as the perpetrator, drove a car that was similar to the getaway car observed at the scene of the crime, shared some physical similarities with the perpetrator, was listed as a contact on the victim's phone, and "was not in police custody on the date of the shooting." 804 N.W.2d at 591. The supreme court concluded that this proffer was sufficient because it placed the alleged

---

[5] In *Carbo*, the supreme court also emphasized that the concern over a "quagmire of matters wholly collateral to the charged offense" was "conspicuously absent" there because the alternative perpetrator was also an identified suspect with concrete links to the crime (highlighted above). 6 N.W.3d at 125. That concern—of a mini-trial within the trial—*is* present here because father is not a suspect with concrete links to *this* crime. Instead, M.R.'s allegations against Rakowiecki originated from an investigation into allegations by M.R.'s sisters against father. During the investigation, M.R. separately alleged that Rakowiecki was "way more abusive" than father, and she has consistently identified Rakowiecki as the assailant.

alternative perpetrator at the scene of the crime and also connected the alleged alternative perpetrator to the victim and to the crime itself. *Id.* at 592. Here, Rakowiecki offered no evidence tying father to these charged offenses against this victim. There is no evidence that father was in M.R.'s bedroom, where the penetrations occurred; just that father lived in the family home during the same period of time. *Cf. Carbo*, 6 N.W.3d at 124 (noting that hair that could have come from the alternative perpetrator was found in the victim's bedroom, where the body was found). We are not convinced that *Ferguson* is sufficiently analogous.

In *Jenkins*, the supreme court held that the district court did not err when it ruled that the defendant's proffer of an alternative perpetrator did not meet the *Hawkins* foundational requirement. *Jenkins*, 782 N.W.2d at 228. The defendant there sought to present evidence of four alternative perpetrators. *Id.* at 224. Essentially, the proffered evidence tying these alleged alternative perpetrators to the charged offense was that they were each present at the scene of the crime at some point in time on the night the murders occurred. *Id.* at 226-27. The supreme court held that this "evidence of mere presence does not satisfy the foundational requirement." *Id.* at 227. Rakowiecki's argument seems to be that his proffer contained more evidence than that presented in *Jenkins*. While it may be true that Rakowiecki proffered more evidence than the defendant in *Jenkins*, Rakowiecki's proffer still distills down to two points: father was present in the family home during the period M.R. alleges she was abused, and father sexually abused M.R.'s sisters during this time period. Rakowiecki does not tie father's general presence in the home to presence at the scene of the crime, let alone presence during any of the penetration events.

12

In sum, we conclude that the district court did not abuse its discretion when it determined that Rakowiecki did not satisfy the foundational requirement for the admission of alternative-perpetrator evidence. And because Rakowiecki did not satisfy the first *Hawkins* step, we need not consider the second step, as to whether the evidence in question is admissible under the rules of evidence. *Jenkins*, 782 N.W.2d at 224. We therefore hold that the district court did not abuse its discretion when it denied the motion to admit Rakowiecki's alternative-perpetrator evidence.

## II. The district court did not err when it imposed three sentences.

Rakowiecki argues that the district court erred by imposing multiple sentences for crimes committed during what the court earlier found, when denying his motion to sever the charges, was a single behavioral incident. The district court was correct in its pretrial analysis regarding what constituted a single behavioral incident, Rakowiecki contends, and judicial estoppel should bar the district court from taking differing positions when deciding the motion to sever and at sentencing.

Here, the district court, in denying the pretrial motion to sever, found that the three offenses occurred during a single behavioral incident because they were allegedly "perpetrated against the same minor victim in the same house within the same general timeframe" rather than "wholly distinct acts which just happened to take place . . . under nearly identical circumstances." At sentencing, however, the district court imposed a sentence for each offense. The district court explained that, after "receiving the entirety of the evidence at trial and the verdicts of the jury, . . . the trial evidence was . . . clear . . . . There was a first incident. There was a last incident. And there were a

13

number of incidents in between." Regarding its pretrial decision not to sever the charges, the district court stated that it "ha[d] a question about" the wisdom of the earlier decision. Nevertheless, the district court imposed one sentence for each offense.

Under Minnesota Statutes section 609.035, subdivision 1 (2014), except under circumstances that do not apply here, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." The supreme court has explained that "the law generally prohibits multiple sentences, even concurrent sentences, for two or more offenses that were committed as part of a single behavioral incident." *State v. Bakken*, 883 N.W.2d 264, 270 (Minn. 2016) (quotation omitted). To decide if two intentional crimes constitute a single behavioral incident, we evaluate the incident's timing and location, and whether the conduct aimed to achieve a single criminal objective. *State v. Bauer*, 792 N.W.2d 825, 828 (Minn. 2011). We review de novo whether a sentence violates section 609.035, subdivision 1. *State v. Branch*, 942 N.W.2d 711, 713 (Minn. 2020).

Rakowiecki argues that the three instances of conduct against M.R. constituted a single behavioral incident and, because the district court stated as such for purposes of its severance analysis, the district court should be judicially estopped from determining that the three instances of conduct against M.R. constituted three behavioral incidents for sentencing purposes. Rakowiecki's trial counsel noted this issue to the district court.[6]

---

[6] While the state noted at oral argument before this court that it did not argue during the pretrial severance hearing that the three offenses constituted a single behavioral incident, it certainly supported the court's denial of the severance motion premised on that analysis.

We are not convinced that the district court, at sentencing, is bound by its earlier decision to join the charged offenses. Certainly, we acknowledge that, as part of the severance analysis, the district court must determine whether the charged offenses are related and that this analysis is the same inquiry used to decide whether to impose multiple sentences. *State v. Ross*, 732 N.W.2d 274, 278 (Minn. 2007). But we find our recent decision in *State v. Danberry* persuasive on the judicial-estoppel issue.[7] No. A22-0856, 2023 WL 5838826, at *9-10 (Minn. App. Sept. 11, 2023), *rev. denied* (Minn. Jan. 16, 2024).

In *Danberry*, we concluded that the district court did not err by imposing multiple sentences after the district court denied Danberry's request to sever charges but then sentenced him on each charge. *Id.* at *9-10. Danberry argued that the district court's pretrial severance ruling should prevent the district court from imposing multiple sentences. *Id.* at *9. We rejected Danberry's argument for two reasons. First, we declined to adopt the doctrine of judicial estoppel. *Id.* Judicial estoppel "is intended to prevent a party from assuming inconsistent or contradictory positions during the course of a lawsuit." *State v. Pendleton*, 706 N.W.2d 500, 507 (Minn. 2005). We stated that, because the supreme court has declined to adopt the judicial-estoppel doctrine, we declined to do so there as well. *Danberry*, 2023 WL 5838826, at *9

---

[7] We cite this case for its persuasive authority. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c) (stating that nonprecedential decisions are not binding authority but may be cited as persuasive authority).

(citing *Ryan Contracting Co. v. O'Neill & Murphy, LLP*, 883 N.W.2d 236, 248-49 (Minn. 2016)). Likewise, we decline to adopt the doctrine of judicial estoppel here.[8]

Second, we stated that "our caselaw has consistently recognized that multiple, separate incidents of criminal sexual conduct involving a single victim are separate behavioral incidents under section 609.035," subdivision 1. *Id.* The same is true here: Rakowiecki was convicted of multiple, separate incidents of criminal sexual conduct against M.R. Consistent with our precedent, we conclude that the criminal sexual conduct in this case does not constitute a single behavioral incident requiring one sentence under Minnesota Statutes section 609.035, subdivision 1. *See State v. Barthman*, 938 N.W.2d 257, 265-67 (Minn. 2020) (holding that two instances of child sexual abuse against the same victim that occurred at separate times were not part of a single behavioral incident); *State v. Suhon*, 742 N.W.2d 16, 24 (Minn. App. 2007) (concluding that three offenses of child sexual abuse that occurred "in many different rooms and at different times" did not constitute a single behavioral incident), *rev. denied* (Minn. Feb. 19, 2008).

To convince us otherwise, Rakowiecki argues that *Danberry* does not authorize the district court to impose multiple sentences. First, he argues that *Danberry* is nonprecedential and therefore not binding. While our nonprecedential cases are not

---

[8] We note that Rakowiecki contends that the *district court* is judicially estopped by its pretrial severance decision. But the doctrine of judicial estoppel appears applicable only to decisions made by parties, not the district court itself. *See, e.g.*, *Thoresen v. State*, 965 N.W.2d 295, 308-09 (Minn. 2021) (declining to adopt the doctrine of judicial estoppel but presenting three conditions that must be met, two involving the party's positions). Because we decline to adopt the doctrine of judicial estoppel, we need not address this potential issue here.

binding, we cite *Danberry* for its persuasive value. Second, Rakowiecki contends that the record in *Danberry* is distinct from the record here. In *Danberry*, the district court denied Danberry's motion to sever because joining the charges would not prejudice him. *Danberry*, 2023 WL 5838826, at *9. According to Danberry, the district court's decision was an "implicit[]" finding that "all the charged offenses were related." *Id.* But we did not delve into the nuances of the district court's severance order in *Danberry*. Rather, in upholding the district court's decision to impose multiple sentences, we declined to adopt the doctrine of judicial estoppel and relied on our caselaw authorizing the imposition of multiple sentences for multiple, separate incidents of criminal sexual conduct against a single victim. *Id.*

Finally, Rakowiecki contends that our rejection of the judicial-estoppel doctrine in *Danberry* was incorrect because, according to Rakowiecki, we already adopted the doctrine, pointing to *Bauer v. Blackduck Ambulance Association*, 614 N.W.2d 747, 749-50 (Minn. App. 2000), and *Port Authority of City of St. Paul v. Harstad*, 531 N.W.2d 496, 500 (Minn. App. 1995), *rev. denied* (Minn. June 14, 1995).

We acknowledge that we applied the doctrine of judicial estoppel nearly 30 years ago in the cases Rakowiecki cited. But the supreme court, as recently as 2021, expressly stated that the doctrine has not yet been adopted. *Thoresen*, 965 N.W.2d at 308; *see also State v. Profit*, 591 N.W.2d 451, 462 (Minn. 1999) (declining to adopt the judicial estoppel doctrine). In cases following *Bauer* and *Harstad*, but before *Thoresen*, we have also noted that the doctrine of judicial estoppel has not been recognized in Minnesota and that it is not this court's "mandate to adopt it." *State v. Hahn*, 799 N.W.2d 25, 39 (Minn. App. 2011),

17

*rev. denied* (Minn. Aug. 24, 2011). Accordingly, we decline to recognize the doctrine of judicial estoppel.[9]

### III. The district court abused its discretion by imposing a 648-month sentence.

Rakowiecki finally argues that his 648-month aggregate sentence is unreasonable, noting that it is, as of the date of briefing, the longest authorized by any Minnesota appellate decision in a case involving sexual offenses against a child.[10]

We will interfere with the district court's decision on sentencing only when the sentence is "disproportionate to the offense or unfairly exaggerates the criminality of the defendant's conduct." *State v. Ali*, 895 N.W.2d 237, 247 (Minn. 2017) (quotation omitted); *see also* Minn. Stat. § 244.11, subd. 2(b) (2024) (permitting appellate review of sentence to determine if it is "unreasonable" or "excessive"). We review the district court's sentencing decision for an abuse of discretion. *State v. Fardan*, 773 N.W.2d 303, 322 (Minn. 2009). In assessing whether the district court abused its discretion, we "look to past sentences received by other offenders," *id.*, and rely on our "collective, collegial experience in reviewing a large number of criminal appeals from all the judicial districts," *State v. Norton*, 328 N.W.2d 142, 146-47 (Minn. 1982).

---

[9] We note, however, that Rakowiecki's counsel highlighted the change in the district court's reasoning between its severance decision before trial and at sentencing. But the district court did not explain what changed, except that "the entirety of the evidence at trial and the verdicts of the jury" made it clear to the district court that there were three separate incidents. While we hold that the district court is not necessarily bound, at sentencing, by its earlier single-behavioral-incident analysis, it would behoove district courts to explain in more detail what occurred at trial that caused it to depart from the earlier decision.

[10] The state has not identified a case in which a longer sentence was affirmed on appeal. Nor has our research revealed one.

Here, the district court imposed consecutive sentences resulting in an aggregate term of 648 months (54 years). Rakowiecki was sentenced to 360 months for count 1, with a criminal-history score of 9; a permissive consecutive sentence of 144 months for count 2, with a criminal-history score of zero; and a permissive consecutive sentence of 144 months for count 3, with a criminal-history score of zero.

We acknowledge the depth and seriousness of the offenses committed by Rakowiecki and the consequential harm inflicted on his niece, M.R. But we conclude that the aggregate 648-month sentence is excessive when measured against sentences imposed in comparable cases involving a single victim and multiple instances of criminal sexual conduct.

Recent and earlier decisions provide useful benchmarks. We recently concluded, in *Danberry*, that an aggregate sentence of 712 months for four counts of first-degree CSC was excessive and remanded with instructions to impose an aggregate sentence of 504 months' imprisonment. *State v. Danberry*, No. A25-0925, 2025 WL 3511906, at *3 (Minn. App. Dec. 8, 2025). In *Doan-Hanson*, we concluded that an aggregate sentence of 688 months (over 57 years) for four first-degree CSC convictions was excessive and exaggerated the criminality of the defendant's conduct. *State v. Doan-Hanson*, No. A24-1214, 2025 WL 1924036, at *9-10 (Minn. App. July 14, 2025). We reversed and remanded for resentencing. *Id.* at *10. In *Barthman*, we determined that a 704-month aggregate sentence for multiple convictions of CSC was excessive and remanded for resentencing. *State v. Barthman*, No. A21-1121, 2022 WL 1073225, at *5 (Minn. App. Apr. 11, 2022), *rev. denied* (Minn. June 29, 2022). In *Perleberg*, which involved repeated assaults over

19

hundreds of occasions, we affirmed an aggregate sentence of 432 months for six CSC convictions. *State v. Perleberg*, 736 N.W.2d 703, 704-05 (Minn. App. 2007), *rev. denied* (Minn. Oct. 16, 2007). And in *Kellogg*, we reversed as excessive a 717-month (nearly 60 years) aggregate sentence for six CSC convictions and other child sexual abuse convictions and modified it to 537 months. *State v. Kellogg*, No. A03-0016, 2004 WL 422703, at *4-5 (Minn. App. Mar. 9, 2004), *rev. denied* (Minn. May 18, 2004).

With these benchmark cases in mind, we conclude that Rakowiecki's 648-month sentence for three first-degree CSC convictions is unreasonable. The district court's sentencing yields an aggregate term that exceeds sentences deemed excessive in other cases involving a single child victim and is thus out of line with our earlier decisions. Further, decisions like *Perleberg*, which included hundreds of assaults across many years, and *Suhon*, which concerned over 800 acts of sexual abuse against a single child victim, also support our conclusion that Rakowiecki's sentence is excessive. *Perleberg*, 736 N.W.2d at 704-05; *Suhon*, 742 N.W.2d at 25. In both of those cases, the length of abuse against the child victim was longer than that perpetrated against M.R.

Horrible acts were perpetrated against M.R. Nevertheless, in light of the decisions discussed above, we reverse Rakowiecki's sentences and remand for the imposition of sentences as follows: 360 months on count 1, the top of the presumptive guidelines sentencing range using a criminal-history score of nine points; a concurrent sentence of 144 months on count 2, using a criminal-history score of zero points; and a consecutive sentence of 144 months on count 3, using a criminal-history score of zero points, for a total

of no more than 504 months.  We conclude these sentences are the appropriate *upper* limit of the district court's sentencing discretion on remand.

**Affirmed in part, reversed in part, and remanded.**